FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAY 6 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TINA CONCEPCION AND
RAYMOND CONCEPCION,

                      Plaintiffs,

    -against-

**MEMORANDUM AND ORDER**
15-CV-4844 (AMD) (LB)

CITY OF NEW YORK, *et al.*,

                      Defendants.
------------------------------------------------------------X

**ANN M. DONNELLY**, U.S. District Judge:

    The plaintiffs brought this 42 U.S.C. § 1983 action against the City of New York and multiple individual defendants alleging false arrest, excessive force, and substantive due process violations; they also allege New York law claims for false arrest, assault, battery, negligence, and intentional infliction of emotional distress. (ECF No. 37.) On October 2, 2018, the defendants moved for summary judgment on all of the plaintiffs' remaining claims.[1] (ECF No. 88.) For the reasons that follow, the defendants' motion is granted.

### BACKGROUND[2]

    On February 13, 2015, plaintiff Raymond Concepcion, a student at Curtis High School in Staten Island, went to the school auditorium to attend a play for his English class. (ECF No.

---

[1] Tina Concepcion began this action in her individual capacity and "on behalf of" Raymond Concepcion, who was a minor at the time. (ECF Nos. 2, 37, 61.) After Mr. Concepcion reached the age of majority, the parties entered a stipulation adding him as a plaintiff. (ECF No. 61.) On January 18, 2017, the parties stipulated to the dismissal of the plaintiffs' claims alleging violations of the Individuals with Disabilities Education Act, Rehabilitation Act, and Americans with Disabilities Act. (ECF No. 58.) They also stipulated to the dismissal of all claims against the New York City Department of Education. (*Id.*)

[2] In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). Because the defendants are moving for summary judgment, I draw all reasonable inferences in the plaintiffs' favor.

1

114, Plaintiffs' 56.1 Counterstatement of Facts ("56.1") ¶ 1-3.[3]) He arrived about a minute after the rest of the class, and a teacher stopped him and asked if he was supposed to be there. (*Id.* ¶ 3.) There is some dispute between the parties over the exchange that followed this question. The defendants say Mr. Concepcion cursed at the teacher and refused to leave, while the plaintiffs assert that Mr. Concepcion said only, "I do belong here," and that he stayed because Assistant Principal (AP) Burbano pulled him aside to determine whether he was supposed to attend the play. (*Id.* ¶ 4.) The parties agree that Principal Curtis arrived and asked AP Burbano to escort Mr. Concepcion to the dean's office. (*Id.* ¶¶ 6-9; ECF No. 108-2, Raymond Concepcion Dep. ("R.C. Dep.") 65:10-12; Curtis Dep. 112:5-12.) AP Burbano called for assistance and School Safety Agents (SSAs) Barrios and Ruperto arrived. (56.1 ¶ 10.)

Mr. Concepcion walked with AP Burbano and the SSAs, but stopped at one point and asked if he could call his mother.[4] (*Id.* ¶ 13; R.C. Dep. 65:23-25.) AP Burbano replied that he could call his mother from the dean's office, but Mr. Concepcion refused to go into the office. (56.1 ¶ 14.) SSA Barrios directed him to a nearby stairwell so that they could talk and so that SSA Barrios could "try to convince" Mr. Concepcion to go to the dean's office. (*Id.* ¶ 15.)

*The Stairwell*

At first, Mr. Concepcion and SSA Barrios were alone in the stairwell.[5] Mr. Concepcion

---

[3] Although the plaintiffs were given the opportunity to revise their 56.1 counterstatement more than once, it still does not comply with my Individual Practices and Rules. I have reviewed the parties' 56.1 submissions and the underlying record; factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Rule 56.1; *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

[4] Mr. Concepcion testified that his mother was "still mad" at him because he failed two classes the prior semester; he did not want to go to the dean's office "and make her more mad" by getting in trouble. (R.C. Dep. 66:20-67:2.)

[5] A surveillance camera captured the interaction in the stairwell between Mr. Concepcion, SSA Barrios, AP Burbano, and others ("SW Video"). The recording has no sound and shows the incident from above. Citations to the video are included where appropriate.

2

sat on the stairs while SSA Barrios stood in front of him and talked to him for several minutes. (56.1 ¶¶ 16-17; SW Video 12:07:30-12:10:07.) SSA Barrios tried to persuade Mr. Concepcion to go to the dean's office, and Mr. Concepcion continued to refuse, repeating that he wanted to call his mother. (56.1 ¶¶ 17-18; R.C. Dep. 66:7-14; Burbano Dep. 49:25-50:5.) AP Burbano came into the stairwell while SSA Barrios was talking to Mr. Concepcion and told Mr. Concepcion that the bell was about to ring, and that he could not sit on the stairs and block traffic.[6] (56.1 ¶ 18; Burbano Dep. 224:11-22.) Mr. Concepcion did not get up. (56.1 ¶¶ 18-19; *see also* SW Video 12:07:30-12:10:07.) AP Burbano called for backup, and additional SSAs, including SSA Ruperto, joined AP Burbano and SSA Barrios in the stairwell. (SW Video 12:10:07-40; R.C. Dep. 66:15-18; Ruperto Dep. 97:5-12.) SSA Barrios and SSA Ruperto stood in front of Mr. Concepcion, and AP Burbano tried to pull him up, but Mr. Concepcion leaned back on the stairs and would not get up. (SW Video 12:10:07-12:11:38.) Eventually, AP Burbano grabbed Mr. Concepcion's shoulder, and he and SSA Barrios pulled Mr. Concepcion to a standing position.[7] (SW Video 12:11:49-12:12:08.) The SSAs tried to guide Mr. Concepcion out of the stairwell, but he resisted; as a result, SSA Barrios and SSA Ruperto had to get him to walk by pushing him along. (SW Video 12:12:08-34.)

*The Hallway Outside the Dean's Office*

After they left the stairwell, SSAs Ruperto and Barrios walked Mr. Concepcion toward the dean's office.[8] (HW Video 12:12:30-43; Ruperto Dep. 105:2-17; 56.1 ¶¶ 18, 21.) When they

---

[6] One or two students appeared on the video during the interaction, and at least one of them had to walk around Mr. Concepcion. (SW Video 12:11:38-12:12:08.)

[7] Mr. Concepcion claimed that his arm was cut when AP Burbano and SSA Barrios pulled him up. (R.C. Dep. 68:20-24.) Hospital records reflect that he had a cut or scratch on his arm. (*See* Larsen Decl. Ex. 17.)

[8] A second surveillance camera captured the events in the hallway outside of the dean's office ("HW Video").

3

reached the door, Mr. Concepcion stopped walking, turned away from the door, and gestured with his hands. (HW Video 12:12:43-49; Ruperto Dep. 105:2-17.) SSA Ruperto was on Mr. Concepcion's right and SSA Barrios was on his left. (56.1 ¶ 23; HW Video 12:12:43-49.)

The parties dispute what happened next. The plaintiffs say that Mr. Concepcion asked again if he could call his mother, the SSAs said he could not, and then SSA Ruperto and SSA Barrios grabbed Mr. Concepcion's arms without provocation. (ECF No. 96; R.C. Dep. 69:22-25.) The defendants respond that Mr. Concepcion made "a gesture as if to swing at" SSA Barrios. (ECF No. 90.) AP Burbano testified that he thought Mr. Concepcion was trying to swing at SSA Ruperto. (Burbano Dep. 231:25-232:4.) SSA Ruperto testified that Mr. Concepcion had his hands clenched at his sides and "made a movement like he was going to go forward... like he was going to run or attack." (Ruperto Dep. 115:10-116:2.)[9]

The recording shows that SSA Ruperto grasped Mr. Concepcion's right arm as SSA Barrios moved toward Mr. Concepcion's left side and grabbed his left arm. (HW Video 12:12:43-57.) SSAs Ruperto and Barrios moved Mr. Concepcion's arms above his head and turned him around, and all three of them fell through the open doorway. (HW Video 12:12:52-57.) AP Burbano and another SSA who was in the hallway moved in and landed on top of the group. (HW Video 12:12:57-12:13:08.) The rest of the action took place off-camera, inside the dean's office. (*Id.*)

Mr. Concepcion testified that SSA Ruperto "pushed" him through the doorway and threw him to the floor, and that his head hit the floor before any other part of his body. (R.C. Dep. 73:9-11, 74:22-75:5.) Female SSAs held his legs and AP Burbano put a knee on the side of Mr. Concepcion's head to hold him down. (*Id.* at 73:14-24, 75:24-76:2.) Mr. Concepcion testified

---

[9] The videotape does not resolve this question; it is not apparent that Mr. Concepcion moved his arm, but the SSAs partially blocked him from the camera's view. (*See* HW Video 12:12:49-53.)

4

that he squirmed and tried to move his head, but that AP Burbano kept his knee on or near Mr. Concepcion's head until SSA Ruperto and SSA Barrios handcuffed him. (*Id.* at 73:25-74:8, 75:16-18, 77:54-6; 56.1 ¶¶ 30-31.) The SSAs stood him up and all three walked to the back of the dean's office. (56.1 ¶¶ 30-31; R.C. Dep. 77:54-6, 82:16-83:16.)

Mr. Concepcion testified that he felt dizzy but did not lose consciousness. (R.C. Dep. 77:21-25.) He sat on a chair in the dean's office for about "two hours," and did not ask to go to the hospital or to see a doctor. (56.1 ¶ 33: R.C. Dep. 87:7-9, 20-25, 88:11-15.) He asked for his bag so he could get his medication, but the SSAs ignored him. (R.C. Dep. 88:5-10.)

Tina Concepcion arrived at the school before Mr. Concepcion left for the police precinct, but was not permitted to speak with him.[10] (56.1 ¶¶ 32, 37; Tina Concepcion Declaration ("T.C. Dec.") ¶ 10.) She saw her son later that afternoon at the precinct; although she did not speak to him, she saw that his "eyes were glazed and he didn't seem to be fully aware of what was going on." (T.C. Dec. ¶¶ 10-12; R.C. Dep. 91:6-11.) She asked the officers if she could see her son or give the officers his anxiety and epilepsy medication. (T.C. Dec. ¶¶ 10-12.) The officers would not take the medication or let Ms. Concepcion see her son, but said that they would take him to the hospital if he was sick. (*Id.*)

Mr. Concepcion testified that he was crying and holding his chest later that night, and an officer asked if he wanted medical attention. (R.C. Dep. 101:2-25.) Mr. Concepcion replied that he did, and the officer ran to get other officers.[11] (*Id.*) EMTs arrived and took Mr. Concepcion to the hospital. (R.C. Dep. 102:20-103:5.)

According to Tina Concepcion, Mr. Concepcion "seemed unusually lethargic" when he

---

[10] The parties dispute whether the dean called Tina Concepcion to tell her what had happened or if she heard about it from her daughter.

[11] The police department records reflect that Mr. Concepcion had a panic attack at 10:45 P.M. on February 13, 2015. (Larsen Decl. Ex. 16.)

returned home the next day; he had headaches and could not keep his eyes focused. (T.C. Dec. ¶ 11.) She took him back to the hospital, where he was diagnosed with a concussion, a contusion on his face, dizziness and asthma. (*Id.*; Larsen Decl. Ex. 17.) Mr. Concepcion testified that his headache persisted for a few days after the incident, and that he suffered from panic attacks and had to be home-schooled for two months because he felt unsafe at school. (R.C. Dep. 24:25-25:9, 100:1-101:1; Larsen Decl. Ex. 24.)

Curtis High School suspended Mr. Concepcion. (Pl.'s Add'l 56.1 ¶ 1.) On March 6, 2015, the New York City Department of Education held a suspension hearing at which the following people testified: AP Burbano, SSA Barrios, SSA Ruperto, and Dean Robert Rautenstrauch.[12] (Pl.'s Add'l 56.1 ¶ 2; Larsen Decl. Exs. 18, 20.) Initially, the Department of Education upheld Mr. Concepcion's suspension, but an impartial hearing officer reinstated him on April 22, 2015. (Pl.'s Add'l 56.1 ¶¶ 3, 5; Larsen Decl. Ex. 18.)

The parties agree that Principal Curtis' only involvement was her role as a supervisor to the other individual defendants and her direction that AP Burbano take Mr. Concepcion to the dean's office. (56.1 ¶ 38.) The parties dispute Dean McGhie's level of involvement. The plaintiffs say that Dean McGhie was in the stairwell and the dean's office, while the defendants respond that "Dean McGhie did not make any physical contact with plaintiff on February 13, 2015 and was not present for any alleged use of force." (56.1 ¶ 39; ECF Nos. 90, 96.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[12] Individual defendant Dean McGhie also appeared at the hearing but did not testify. (Larsen Decl. Ex. 18.)

6

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" for the purposes of summary judgment when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## DISCUSSION

The plaintiffs argue that the SSAs and school employees acted unlawfully when they escorted Mr. Concepcion to the dean's office, stopped him in the stairwell, and forcibly arrested him. The defendants answer that the SSAs acted reasonably and had probable cause to arrest Mr. Concepcion. For the reasons that follow, I grant the defendants' motion for summary judgment.

### I. False Arrest

Mr. Concepcion asserts claims for false arrest pursuant to § 1983 and New York law. (ECF No. 37, Am. Compl. ¶¶ 158-59, 183-86.) In order to state a § 1983 claim, Mr. Concepcion must establish that the defendants deprived him of his Fourth Amendment rights by intentionally confining him without his consent and without justification. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). The elements of false arrest under New York law are the same. *Weyant*, 101 F.3d at 852; *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

Probable cause "is a complete defense" to false arrest claims under federal and New York law. *Weyant*, 101 F.3d at 852; *Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir. 2002); *see also Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."). A court may decide the question of probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Jenkins*, 478 F.3d at 88.

Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000)). In deciding whether an officer had probable cause to arrest, the court "consider[s] th[e] facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Wieder v. City of N.Y.*, 569 F. App'x 28, 29-30 (2d Cir. 2014) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997)). Officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989).

The officer's "subjective reason for making the arrest" does not have to align with a specific criminal offense, nor does the officer need "concrete proof of each element of a crime to establish probable cause for an arrest." *Corso v. City of New York*, No. 17-CV-6096, 2018 WL 4538899, at *7 (S.D.N.Y. Sept. 20, 2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) and *Gonzalez*, 728 F.3d at 155); *Holley v. Cty. of Orange, NY*, 625 F. Supp. 2d 131, 139 (S.D.N.Y. 2009) ("Under New York law, a police officer only needs probable cause that a crime was committed to arrest an individual, not probable cause of a specific crime.").

The SSAs had probable cause to arrest Mr. Concepcion. After he exchanged words with a teacher, the SSAs tried to convince Mr. Concepcion to go directly to the dean's office and he refused. The SSAs directed him to a nearby stairwell and tried to persuade him to go to the dean's office. Mr. Concepcion sat on the stairs, blocking traffic, and refused to go to the dean's office unless they allowed him to call his mother first. Because the bell was about to ring for students to change classes, the SSAs told Mr. Concepcion to move so that he would not block students trying to use the stairs to get to their classes. These directions were reasonable and consistent with "promot[ing] the public order." *See Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 205-06 (2d Cir. 2010). Mr. Concepcion still refused. It was then that the SSAs and AP Burbano lifted him to a standing position and walked him out of the stairwell, as he resisted.

Mr. Concepcion continued to resist the SSAs' directions outside of the dean's office. The parties' disputes about exactly what Mr. Concepcion did in the seconds before the group fell into the office are not significant on the issue of probable cause.[13] There is no question that, despite

---

[13] Mr. Concepcion contends that any motions he made outside the dean's office were merely conversational hand gestures. But the relevant focus is not on Mr. Concepcion's motivations, but on how a reasonable officer or school employee would view the plaintiff's actions. *See Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 71 (2d Cir. 2018) ("[O]ur focus is not on [the plaintiff's] motivations but instead on the sequence of events from the perspective of a reasonable officer at the scene." (quoting *Tracy v. Freshwater*, 623 F.3d 90, 97 (2d Cir. 2010))).

many opportunities to comply, Mr. Concepcion refused to leave the hallway and go into the dean's office. At that point, the SSAs had a reasonable basis to believe that there was probable cause to arrest Mr. Concepcion for disorderly conduct.[14] *See Crenshaw*, 372 F. App'x at 205–06 (a person is guilty of committing disorderly conduct if he refuses to obey an officer's order to move, unless the order was arbitrary and "not calculated in any way to promote the public order." (quoting *People v. Galpern*, 181 N.E. 572, 574 (1932))); N.Y. Penal Law § 240.20.

Because the SSAs had probable cause to arrest, they also had arguable probable cause to arrest, and are therefore entitled to qualified immunity from a false arrest claim. *See Kass v. City of New York*, 864 F.3d 200, 206, 213-14 (2d Cir. 2017) (dismissing federal and state law false arrest claims, and holding "an officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged."). Therefore, the claims for false arrest are dismissed. *See Crenshaw*, 372 F. App'x at 206.

## II. Excessive Force

Mr. Concepcion also asserts that the defendants used excessive force in arresting and handcuffing him. (Am. Compl. ¶¶ 157-58; ECF No. 96 at 24-25.) The Fourth Amendment prohibits the use of unreasonable and excessive force during an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010). Because the test is one of "objective reasonableness," the inquiry is fact specific. *Id.* (citing *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). In balancing the intrusion on Fourth Amendment interests against

---

[14] The defendants offer two other offenses for which the officers had probable cause: obstruction of governmental administration in the second degree and harassment in the first degree. (ECF No. 90 at 16-22.) Because I find that the officers had a probable cause basis to arrest for disorderly conduct, I do not address alternate bases for arrest.

government interests, courts consider the following factors: the nature and severity of the offense leading to arrest, whether the suspect poses an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest, the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was used in a good faith effort to maintain or restore discipline. *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 395); *Johnson*, 239 F.3d at 251-52 (quoting *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988)).

It is of course possible, with the benefit of hindsight, to question whether a full blown arrest was the best option in these circumstances. But a court must judge the use of force from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove" violates the Fourth Amendment, "even if it may later seem unnecessary in the peace of a judge's chambers." *Id.* (internal citations omitted). At every step of this encounter, Mr. Concepcion actively resisted the school official's directions that he go to the dean's office – when AP Burbano escorted him from the auditorium, while he was sitting on the stairs, while the SSAs escorted him to the dean's office, and when he stopped outside the dean's office door. While it is clear that Mr. Concepcion was "seized" within the meaning of the Fourth Amendment, the seizure was justified and "reasonable in scope." *See J.L. v. E. Suffolk Boces*, No. 14-CV-4565, 2018 WL 1882847, at *11 (E.D.N.Y. Apr. 19, 2018) ("[T]here can be no dispute that J.L. was seized as within the meaning of the Fourth Amendment… However, it is also beyond dispute that the seizure was justified at its inception and reasonable in scope.").

Though there is some dispute over what Mr. Concepcion did immediately before the SSAs grabbed his arms, the dispute is not material. Officers may use reasonable force to effect

11

an arrest. *See, e.g., Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (no reasonable factfinder could conclude officers' actions were excessive where "to effect the arrest, officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist"). The plaintiffs do not argue and the record does not establish that any of the officers were malicious or hurt Mr. Concepcion intentionally. Even if they had pushed him to the ground, there would be no cognizable excessive force claim. *See Tracy*, 623 F.3d at 97-98 (officer's use of force was reasonable when trying to prevent an escape: "Given that [Tracy] was clearly resisting arrest at that point, it was not unreasonable for Freshwater to respond by diving on top of Tracy and pinning him down so that he could not get back up and continue to flee."); *J.L.*, 2018 WL 1882847, at *11 (force used, including tackling J.L. and holding his arms, was objectively reasonable after J.L. threatened staff member and "balled his hand into a fist").

The record viewed in the light most favorable to the plaintiffs demonstrates it was Mr. Concepcion's repeated refusal to comply with legitimate orders that led to the struggle in the hallway. Any reasonable juror evaluating the situation from the perspective of an officer on the scene would find that the defendants' use of force was not excessive under the circumstances. *See J.L.*, 2018 WL 1882847, at *11.

The defendants also argue that even if the SSAs acted unreasonably or with excessive force, they are entitled to qualified immunity. Because I find that the SSAs and school employees did not use excessive force to arrest Mr. Concepcion, there is no need to reach the question of qualified immunity on the excessive force claim. *See Mara v. Rilling*, No. 17-CV-3326, 2019 WL 1523042, at *12 (2d Cir. Apr. 9, 2019) ("[A] defendant has no need for an immunity shield where there is no viable constitutional claim."); *Brown v. City of New York*, 862

F.3d 182, 186 (2d Cir. 2017) (District Court granted summary judgment on excessive force claim because it "conclude[d] that the officers did not use excessive force," therefore, it "had no need to consider whether the doctrine of qualified immunity protected the two individual defendants from liability."). Accordingly, the plaintiffs' excessive force claim is dismissed.

### III. Substantive Due Process

The plaintiffs argue that the defendants violated Mr. Concepcion's substantive due process rights before and after the arrest.[15] (Am. Compl. ¶¶ 159-60; ECF No. 96 at 25-27.)

The Due Process Clause of the Fourteenth Amendment provides that no state "shall... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process "is the right to be free of arbitrary government action that infringes a protected right." *J.L.*, 2018 WL 1882847, at *8 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005)). To prevail on a substantive due process claim, the plaintiffs must establish that the defendants infringed on a protected liberty interest in an arbitrary or irrational manner that shocks the conscience. *See J.L.*, 2018 WL 1882847, at *8; *see also Votta ex rel. R.V. & J.V. v. Castellani*, 600 F. App'x 16, 18 (2d Cir. 2015).

Students have a protected liberty interest in the "right to be free from the use of excessive force." *J.L.*, 2018 WL 1882847, at *8 (citing *Johnson*, 239 F.3d 246). However, government action resulting in physical injury does not violate substantive due process unless "the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Lombardi v. Whitman,* 485 F.3d 73, 79 (2d Cir. 2007) (quoting

---

[15] Mr. Concepcion argues the defendants violated his rights by "physical[ly] assaulting him during his arrest... handcuffing his hand too tightly; failing to provide him with medical attention... refusing to let him call or see his mother... transporting him to the precinct without his coat in freezing weather and without his antianxiety medicine or his EpiPen for his epilepsy... putting him in a holding cell with a grown man he was wary of... [and] transporting him in handcuffs and leg shackles to the hospital." (ECF No. 96 at 26-30.)

*Pena v. DePrisco,* 432 F.3d 98, 112 (2d Cir. 2005)). Negligent conduct does not rise to the level of a substantive due process violation; the conduct must be intentionally harmful, or "brutal and offensive to human dignity." *Smith v. Half Hollow Hills Cent. School Dist.,* 298 F.3d 168, 173 (2d Cir. 2002); *Lombardi,* 485 F.3d at 81-82. Simply put, "not all wrongs perpetrated by a government actor violate due process." *Smith,* 298 F.3d at 173.[16]

The conduct in this case did not violate due process. *See Gingrich v. William Floyd Sch. Dist.,* No. 17-CV-3501, 2018 WL 3057719, at *4 (E.D.N.Y. June 20, 2018) (citing *Albright v. Oliver,* 510 U.S. 266, 272 (1994)); *J.L.,* 2018 WL 1882847, at *8. Indeed, courts have rejected due process claims in more compelling factual scenarios. For example, in *Votta,* 600 F. App'x at 16-18, the plaintiff accused a coach of handling players roughly, grabbing their facemasks and shoulder pads, shaking them, and screaming at them in such close proximity that he spat on them. The Second Circuit found that the conduct was "minor... even considered in the aggregate," and "insufficient to permit a reasonable jury to determine that it shocked the conscience." *Id.* at 19.

Similarly, in *J.L.*, a special needs student accused a teacher's assistant of tackling him, wrestling him to the ground, and causing a nosebleed. 2018 WL 1882847 at *2. The court granted the defendant's motion for summary judgment, holding that while the assistant teacher's

---

[16] The plaintiffs' claims about post arrest conduct — that his handcuffs were too tight, that he was not given a coat, that he was not permitted to see his mother or to have his medicine — do not "establish that 'the alleged use of force is objectively sufficiently serious or harmful enough' to be actionable." *Jackson v. City of New York,* 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) (quoting *Cunningham v. Rodriguez,* No. 01-CV-1123, 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002)). "[T]he Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson,* 939 F. Supp. 2d at 231 (quoting *Lemmo v. McKoy,* No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)). "Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Id.*

14

actions were "disproportionate to the force needed," the conduct was not "so egregious and outrageous that it shocked the conscience," the "use of force was an effort to restore discipline," and there was no evidence that the teacher acted "sadistically or maliciously." *Id.* at *9.

On the other hand, the Second Circuit found that a gym teacher who choked an eighth grader, dragged him across the floor by his neck, repeatedly slammed his head into the bleachers, and punched him in the face violated the student's due process rights. *Johnson*, 239 F.3d at 251-53. The teacher's "extremely violent" conduct was so "conscience-shocking" that it violated the student's due process rights primarily because the force used was "maliciously and sadistically employed in the absence of a discernible government interest" and "likely to produce substantial injury." *Id.* at 252-53.[17]

"The protections of substantive due process are available only against egregious conduct which goes beyond merely 'offend[ing] some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience." *Smith*, 298 F.3d at 173 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033, n.6 (2d Cir. 1973)). Even when the facts are viewed in the light most favorable to the plaintiffs, the conduct in this case does not meet that test. The defendants did not act maliciously and they had a legitimate interest in disciplining Mr. Concepcion and in maintaining order at the school. Courts should be "cognizant of the Supreme Court's admonition that 'executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to ... a font of tort law.'" *Smith*, 298 F.3d at 173 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The defendants'

---

[17] The court in *Johnson* specifically narrowed its holding to exclude later cases where "injurious conduct undertaken in the pursuit of a legitimate government interest and involving lesser degrees of culpability, such as gross negligence or recklessness, might be at issue." 239 F.3d at 254.

conduct does not shock the conscience or rise to the level of a constitutional violation. *See Smith*, 298 F.3d at 173; *Votta*, 600 F. App'x at 19; *Johnson*, 239 F.3d at 252-53; *J.L.*, 2018 WL 1882847, at *9. Therefore, the plaintiffs' substantive due process claim is dismissed.[18]

## IV. State Law Claims

### a. *Assault and Battery*

The defendants argue that they are entitled to summary judgment on the plaintiffs' assault and battery claims because the SSAs had probable cause to arrest Mr. Concepcion and used reasonable force in making the arrest. (ECF No. 90 at 30.) The plaintiffs respond that to succeed on a claim for assault and battery pursuant to New York law, they must establish only that Mr. Concepcion was in imminent fear of harmful or offensive contact and are not required to prove an injury. (ECF No. 96 at 27-28.)

Under New York law, assault is "an intentional placing of another person in fear of imminent harmful or offensive contact," and battery is "an intentional wrongful physical contact with another person without consent." *Morrison v. City of New York*, No. 14-CV-4508, 2019 WL 175121, at *9 (E.D.N.Y. Jan. 10, 2019) (quoting *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006)). When an arrest is lawful, intentional contact with the arrested person does not constitute assault and battery, as long as the force was reasonable. *Morrison*, 2019 WL 175121, at *9; *Cunningham v. United States*, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007). Determining whether the force was "reasonable" involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham*, 490 U.S. at 396).

---

[18] The defendants do not assert a qualified immunity defense to the plaintiffs' substantive due process claim.

16

As discussed above, the SSAs had probable cause to arrest Mr. Concepcion and did not use excessive force to effect the arrest. Therefore, no reasonable juror could find for the plaintiffs on their assault and battery claim, and it must be dismissed.

b. *Intentional Infliction of Emotional Distress*

Intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239-40 (E.D.N.Y. 2015) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (1993)). The "extreme and outrageous conduct" must "go beyond all possible bounds of decency" and be "atrocious, and utterly intolerable in a civilized community." *Greenaway*, 97 F. Supp. 3d at 239-40 (internal citations omitted).

As discussed above, no reasonable juror could conclude that the defendants' conduct was extreme or outrageous. *See Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *28 (S.D.N.Y. Jan. 3, 2013) ("Here, the evidence shows that the officers exercise[d] objectively reasonable judgment in a difficult and confused situation; *a fortiori* this conduct was not outrageous. Given the lack of outrageousness, even a negligent infliction claim of emotional distress will not lie."). The plaintiffs' claim for intentional infliction of emotional distress is dismissed.

c. *Negligence*

The plaintiffs allege that Principal Curtis, Dean McGhie and the New York City Police Department of School Safety breached their duty of care to Mr. Concepcion by failing to intervene on his behalf and failing to "stay informed about the pending class action lawsuits against the City of New York" asserting false arrest or excessive force claims. (ECF No. 96 at

28.) The plaintiffs do not present a theory on which a valid negligence claim can be based.[19]

"The degree of care owed by a school to its student is that degree of supervision that a reasonable parent would undertake in the same or similar circumstances." *Knicrumah v. Albany City School Dist.*, 241 F. Supp. 2d 199, 211-12 (N.D.N.Y. 2003) (citing *Gonzalez v. City of New York*, 730 N.Y.S.2d 154, 155 (2d Dep't 2001)). "When a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Busch v. City of New York*, No. 00-CV-5211, 2003 WL 22171896, at *7 (E.D.N.Y. Sept. 11, 2003) (quoting *Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)); *see also J.L.*, 2018 WL 1882847, at 12 (denying summary judgment on negligence claim: "It is well-settled that once intentional offensive conduct has been established, the actor is liable for assault and not negligence.").

The plaintiffs' allegations are based on conduct that was intentional. "[R]egardless of what led to the circumstances in which force was used... the use of force against him w[as] intentional." *Bah v. City of New York*, No. 13-CV-6690, 2017 WL 435823, at *4 (S.D.N.Y. Jan. 31, 2017) (dismissing negligence claims on summary judgment). Therefore, any negligence claim based on the defendants' intentional conduct is dismissed.

To the extent the plaintiffs base their claim on negligent supervision or training of an employee, it also must be dismissed. It is well settled that "defendants cannot be held liable for their alleged negligent hiring, training, supervision, or retention of [an employee accused of wrongful conduct] unless they had 'notice [of said employee's] propensity for the type of behavior causing plaintiff's harm.'" *Knicrumah*, 241 F. Supp. 2d at 211 (quoting *Paul J.H. v. Lum*, 736 N.Y.S.2d 561, 562 (4th Dep't 2002)) (collecting cases). The plaintiffs have not

---

[19] The plaintiffs do not cite any law to support their claim — raised for the first time in their response — that a defendant has a duty to stay apprised of ongoing class action litigations.

alleged that there was prior disciplinary action against any of the individual defendants, and have not argued that any of them had a propensity to use excessive force. Thus, to the extent the plaintiffs' claim is based on a theory of negligent supervision, it must be dismissed.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is granted and the plaintiffs' remaining claims are dismissed. The Clerk of the Court is respectfully directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

                                                   s/Ann M. Donnelly
                                                   Ann M. Donnelly
                                                   United States District Judge

Dated: Brooklyn, New York
       May 6, 2019